## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | |
|---|---|
| **BARBARA FERRELL,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. 2:13-cv-935-MHT-PWG |
| ) | |
| **CITY OF TALLASSEE,** ) | |
| ) | |
| **Defendant.** ) | |

## **REPORT AND RECOMMENDATION**

Plaintiff Barbara Ferrell commenced this lawsuit on December 20, 2013, seeking redress for alleged violations of her constitutional rights by a police officer during her arrest in Tallassee, Alabama, on December 20, 2011. Generally, Plaintiff avers that an unnamed Tallassee police officer "groped and continuously and repeatedly grabbed and rubbed the breast and genitals of the Plaintiff" while searching her person after placing her under arrest. (Doc. 1 at pp. 1-2). Plaintiff asserts federal claims, through the remedial vehicle of 42 U.S.C. § 1983, for violations of her rights secured by the Fourth and Eighth Amendments of the U.S. Constitution and state law claims for "assault and battery" under Alabama law. (Doc. 1). The claims are brought against the City of Tallassee, Alabama, and unnamed individual defendants.

This matter is before the court on Defendant's motion for summary judgment on all claims. (Doc. 15). The parties submitted briefs and evidentiary materials. The motion is taken under submission on the record and without oral argument. Upon consideration and for the reasons stated herein, the Magistrate Judge **RECOMMENDS** that the motion for summary judgment is due to be **GRANTED**.

## I. JURISDICTION AND VENUE

On November 25, 2014, the above-styled matter was referred to the undersigned for review by United States District Judge Myron H. Thompson. (Doc. 14); *see also* 28 U.S.C. § 636(b); Rule 72, Fed. R. Civ. P.; *United States v. Raddatz,* 447 U.S. 667 (1980); *Jeffrey S. v. State Board of Education of State of Georgia,* 896 F.2d 507 (11th Cir. 1990).

Subject matter jurisdiction over Plaintiff's federal claims is conferred by 28 U.S.C. § 1331. The court may exercise supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367. The parties do not dispute venue or personal jurisdiction, and there are adequate allegations in Plaintiff's Complaint to support both.

## II. SUMMARY JUDGMENT STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together

with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000).[1]  The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.  Once the moving party has met its burden, Rule 56 requires the nonmoving party to go beyond the pleadings and, by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324.

The substantive law will identify which facts are material and which are irrelevant. *Chapman*, 229 F.3d at 1023; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the nonmovant. *See Chapman*, 229 F.3d at 1023; *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).  When opposing a motion for

---

[1] In 2007, Rule 56 was amended in conjunction with a general overhaul of the Federal Rules of Civil Procedure. The Advisory Committee was careful to note, however, that the changes "are intended to be *stylistic only*." Adv. Comm. Notes to Fed. R. Civ. P. 56 (2007 Amends.) (emphasis supplied). Consequently, cases interpreting the previous version of Rule 56 are equally applicable to the revised version.

summary judgment, however, the nonmovant can no longer rest on mere allegations, but must set forth evidence of specific facts. *See Lewis v. Casey*, 518 U.S. 343 (1996) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *Chapman*, 229 F.3d at 1023. If the evidence [presented by the nonmoving party to rebut the moving party's evidence] is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249.

## III. BACKGROUND AND STATEMENT OF RELEVANT FACTS[2]

On December 20, 2011, City of Tallassee police officers arrested Plaintiff and her son during an undercover drug operation. Prior to the arrest, at the direction of

---

[2] These are the facts for summary judgment purposes only. They may not be the actual facts. *See Cox v. Administrator U.S. Steel & Carnegie*, 17 F.3d 1386, 1400 (11th Cir. 1994) ("[W]hat we state as 'facts' in this opinion for purposes of reviewing the rulings on the summary judgment motion [ ] may not be the actual facts.") (citation and marks omitted). Also, the "facts" set out herein are gleaned from the parties' evidentiary submissions but not from counsels' unsubstantiated statements in the parties' briefs. "Statements by counsel in briefs are not evidence." *Skyline Corp. v. N.L.R.B.*, 613 F.2d 1328, 1337 (5th Cir. 1980). *See also Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (holding that decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981, are binding in the Eleventh Circuit).

The facts set out *infra* that are based on disputed evidence are construed in a light most favorable to Plaintiff, and all reasonable inferences have been drawn from the evidence in her favor. That construction and deference ends where there is no evidence to support an allegation of fact. Plaintiff relies on the unsupported allegations of her Complaint in opposition to summary judgment, even to the extent that her own deposition testimony is inconsistent with or does not support the factual averments in the Complaint. No findings of fact or credibility determinations are made from the evidence.

Tallassee police officers, a confidential informant arranged to purchase crack cocaine from Plaintiff's son, Mr. Jessie Ferrell. The confidential informant telephoned Mr. Ferrell while the police covertly listened and recorded the conversation. The two agreed that Mr. Ferrell would deliver crack cocaine by placing it in the informant's mailbox, and the informant was to leave $300.00 inside the mailbox to pay Mr. Ferrell for the drugs. The informant told police that Mr. Ferrell would likely arrive in a silver automobile, possibly with a female driver.

The police instructed the informant to wait at his residence for Mr. Ferrell to deliver the crack cocaine. Police officers positioned themselves near the residence and waited. Sometime later, they observed a silver Dodge sedan stop at the informant's mailbox. Plaintiff drove the sedan. One police officer witnessed Mr. Ferrell, who was in the passenger seat of the vehicle, open the informant's mailbox. Police officers approached the vehicle with guns drawn and ordered the occupants to exit the car and lie on the ground. Plaintiff and Mr. Ferrell were then handcuffed.

A police officer assisted Plaintiff to her feet. While Plaintiff was handcuffed and standing, a male police officer performed a search of her person. (Doc. 15-1 at p. 14). That was the only time Plaintiff was searched after her arrest.[3] Also, while

---

[3] Plaintiff's Complaint alleges that she was searched several times by multiple police officers. Plaintiff testified that she was searched once during her arrest by one male officer. (Doc. 15-1 at p. 14). Because this is a motion for summary judgment, the "facts" are gathered from Plaintiff's

5

her Complaint alleges that she was subjected to a "strip search," Plaintiff testified that she was fully clothed during the search. (Doc. 15-1 at p. 21).

Plaintiff testified that the search was "fast" and a "normal search."[4] (Doc. 15-1 at p. 16). The police officer who searched Plaintiff did not speak to her or issue any verbal commands. (Doc. 15-1 at p. 20). During the search, the police officer touched Plaintiff's breasts and genitals. (Doc. 15-1 at p. 15). The officer did not touch the bare skin on Plaintiff's breasts nor did he put his hands inside of Plaintiff's sweatshirt or bra. He felt under, between, and around her breasts, through her clothes. (Doc. 15-1 at pp. 15-16). He also ran his hands up and down her legs and thighs, but he did not expose or touch Plaintiff's skin. (Doc. 15-1 at pp. 15-17). Plaintiff testified that the searching officer "rubbed repeatedly ... in my vagina area.... [i]t wasn't just a touch." (Doc. 15-1 at p. 23). During the search, the officer removed Plaintiff's cellular phone from her pants pocket and placed it in her jacket pocket.

Plaintiff was "afraid," and she lost control of her bladder. (Doc. 15-1 at p. 18). She felt "violated" by the search and it caused her to immediately have "flashbacks" of being raped. (Doc. 15-1 at p. 23). She did not inform the arresting officers at the time of her arrest and search that she previously was the victim of a violent sexual

---

deposition testimony where it conflicts with her unsupported allegations.

[4] Plaintiff also testified that she has never been trained on police searches. (Doc. 15-1).

6

assault.[5]  (Doc. 15-1 at p. 18).  She began having nightmares after the arrest and search, and she sought medical treatment because she was unable to sleep.  (Doc. 15-1 at p. 21).

The Chief of Police for the City of Tallassee, Alabama, first received notice that Plaintiff complained of an improper search when he was given a copy of this lawsuit.  It is undisputed that, prior to filing this lawsuit, Plaintiff did not complain to the City of Tallassee or to the police department that she has been improperly or unlawfully searched at the time of her arrest.  The Chief was present at the scene of Plaintiff's arrest, but he did not witness the search.  After this lawsuit was filed, the Chief discussed Plaintiff's allegations with the other arresting officers, but there was no formal investigation into Plaintiff's allegations of wrongdoing.  (Doc. 15-2).

As to Defendant's policies, the Chief testified that Defendant's policy and practice is to search all individuals who have been arrested.  (Doc. 15-2 at p. 9).  Searching suspects incident to an arrest is of particular importance in narcotics related arrests to ensure officer safety.  (Doc. 15-2 at p. 9).  Males and females are searched in similar ways, which include searches around the genitals.  If a female suspect is

---

[5] Plaintiff testified that, at age 13, she was attacked and raped by three "young men," presumably Plaintiff's neighbors, who later bragged about the rape at a neighborhood party. (Doc. 15-1 at pp. 23-24). One of the attackers fathered Plaintiff's first child, and Plaintiff was unsuccessful in compelling a paternity test or in obtaining child support payments from her attackers.  She reported the attack to family members, but she did not notify the police because she "was young and ... didn't know." (Doc. 15-1 at p. 24).

7

placed under arrest and a female police officer is on the scene, the female officer will conduct the search. However, in the absence of a female officer, a male officer will and must search a female suspect. There was no female officer present at Plaintiff's arrest, and Plaintiff testified at her deposition that the search made her feel "violated" because a male officer was the one touching her. (Doc. 15-1 at p. 23).

The officers on the scene of Plaintiff's arrest are certified by the Alabama organization that oversees the training and certification of police officers. (Doc. 15-2). Part of that certification process includes training on searching suspects. (*Id.*). Moreover, each police officer employed by Defendant undergoes twelve hours of continuing education each year on a variety of subjects, including training regarding searches and seizures. (*Id.*).

Plaintiff and Mr. Ferrell were indicted by a grand jury as a result of the undercover operation. Mr. Ferrell pled guilty to drug charges. The criminal charges against Plaintiff were dismissed after Mr. Ferrell pled guilty and assumed responsibility for the crimes. Exactly two years after her arrest, Plaintiff filed this lawsuit.

## IV.  DISCUSSION

### A.  Fictitious Defendants

Defendant moves for summary judgment as to all Plaintiff's claims brought

against fictitious parties. Plaintiff offered no response to Defendant's arguments that summary judgment should be granted on her claims against fictitious parties. Issues and contentions not raised in a party's brief in opposition to summary judgment are deemed abandoned. *See, e.g.*, *Chapman v. AI Transport,* 229 F.3d 1012, 1027 (11th Cir. 2000) (*en banc*) ("Parties opposing summary judgment are appropriately charged with the responsibility of marshaling and presenting their evidence before summary judgment is granted, not afterwards."); *Road Sprinkler Fitters Local Union No. 669 v. Independent Sprinkler Corp.*, 10 F.3d 1563, 1568 (11th Cir. 1994) (holding that a district court can "properly treat as abandoned a claim alleged in the complaint but not even raised as a ground for summary judgment") (citing *Lazzara v. Howard A. Esser, Inc.*, 802 F.2d 260, 269 (7th Cir. 1986) (holding that a ground not pressed in opposition to a motion for summary judgment is to be treated by the district court as abandoned)).

> In opposing a motion for summary judgment, a party may not rely on his pleadings to avoid judgment against him. There is no burden on the district court to distill every potential argument that could be made based upon the materials before it on summary judgment. Rather, the onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned....

*Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (citations and internal quotation marks omitted). For this reason, Plaintiff's claims against

9

fictitious parties are properly treated as abandoned, and summary judgment should be granted in Defendant's favor.

In addition, with a limited exception that does not apply in this case, "[a]s a general matter, fictitious-party pleading is not permitted in federal court."[6] *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010) (citing *New v. Sports & Recreation, Inc.*, 114 F.3d 1092, 1094 n.1 (11th Cir. 1997)). A district court should dismiss claims against fictitious parties with prejudice; as such, summary judgment is alternatively due to be granted on the merits in Defendant's favor on Plaintiff's claims against unnamed, fictitious parties. *See id.* (citation omitted).

### B.  Eighth Amendment

Plaintiff asserts an Eighth Amendment claim, through § 1983, in the opening paragraphs of her Complaint. (Doc. 1). Defendant moves for summary judgment on

---

[6] The Eleventh Circuit "created a limited exception to this rule when the plaintiff's description of the defendant is so specific as to be 'at the very worst, surplusage.'" *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010) (quoting *Dean v. Barber*, 951 F.2d 1210, 1215–16 (11th Cir. 1992)). This case does not fall within that exception. *See Richardson*, 598 F.3d at 738. Plaintiff names "John Doe A Through Z, the Tallassee Police Officers who stopped and/or detained the Plaintiff on December 20, 2011, but whose true names and legal identities are otherwise unknown at this time, but will be added by amendment when ascertained, each in his individual capacity[.]" (Doc. 1 at p. 1). That description, which could be read to name twenty-six individuals, does not meet the requisite specificity requirement for the exception to the rule to apply. Also, Plaintiff does not dispute Defendant's assertion in the instant motion that Plaintiff learned, during the course of discovery, the names of the police officers who were present at her arrest. Plaintiff did not seek leave to amend her Complaint to add those individuals as named defendants to this action, and the deadline set out in the Uniform Scheduling Order for amending the pleadings is passed. (Doc. 9).

this claim, and Plaintiff did not oppose Defendant's motion for summary judgment as to her § 1983 Eighth Amendment claim. Because of Plaintiff's failure to oppose summary judgment on this claim, the motion is due to be granted due to Plaintiff's abandonment of her Eighth Amendment claim. *See* Section III.A., *supra*.

Alternatively, the evidence of record, when construed in a light most favorable to Plaintiff, does not support an Eighth Amendment claim. Plaintiff does not allege that she was incarcerated at the time she was unlawfully searched. Defendant correctly argues that a § 1983 Eighth Amendment claim must be predicated on alleged unlawful conduct that occurred during a plaintiff's period of confinement. *See LaMarca v. Turner*, 995 F.2d 126, 1535 (11th Cir. 1993). As there is no evidence of any unlawful conduct during Plaintiff's incarceration subsequent to her arrest, nor are there any factual allegations in the Complaint of such conduct, summary disposition in Defendant's favor is appropriate as to Plaintiff's Eighth Amendment claim.

      **C.**    **Fourth Amendment — Municipal Liability for Unlawful Search**

Plaintiff expressly opposes Defendant's motion for summary judgment as to her § 1983 Fourth Amendment claim, which is properly characterized, in general terms, as a claim for municipal liability against Defendant for a policy of permitting unconstitutional or unlawful searches of female suspects by male police officers

employed by the City of Tallassee.[7] In her Complaint, Plaintiff frames her Fourth Amendment claim as one for a "warrantless search" without probable cause and that the search was *per se* unreasonable because of its intrusiveness. (Doc. 1 at p. 3). Even assuming *arguendo* that the search of Plaintiff violated the Fourth Amendment Plaintiff has neither argued nor met the basic threshold for evoking § 1983 municipal liability.

The Eleventh Circuit has determined that, "to impose § 1983 liability on a municipality, a plaintiff must show: (1) that [her] constitutional rights were violated; (2) that the municipality has a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004) (citation omitted). Defendant argues that the Fourth Amendment is not violated in this case because probable cause existed to detain Plaintiff, arrest her, and that searching a suspect incident to an arrest does not offend the constitution. Defendant, however, does not offer legal argument on Plaintiff's claim that the search of her person

---

[7] While not addressed by the parties in the briefing on the instant motion, during her deposition, Plaintiff testified that one of the police officers present at her arrest pointed a gun at her, repeatedly "called us nigger," said multiple times that "[h]e was going to blow our [sic] fucking head off," and spat in her face during an interrogation. (Doc. 15-1 at p. 20). That officer is not the one who searched Plaintiff. (Doc. 15-1 at p. 20). On the evidence of record, there is no way to ascertain when those statements and conduct occurred in temporal proximity to the search of Plaintiff's person. There are no allegations in the Complaint speaking to or even hinting at those events, and, while abhorrent, they do not form the basis of Plaintiff's § 1983 municipal liability claim.

violated the Fourth Amendment because the searching officer "rubbed" her vagina.[8] In its motion for summary judgment, Defendant argues that "assuming Plaintiff could present a genuine issue of material fact regarding whether a constitutional violation occurred, Plaintiff still cannot present evidence" of a policy or custom, and Defendant focuses its reply brief exclusively on the issue of whether Plaintiff can demonstrate a policy sufficient to impose § 1983 liability against a municipality. (Doc. 15 at p. 12; Doc. 28). Plaintiff, likewise, does not provide any legal argument, beyond unsupported conclusory statements, that the Fourth Amendment was violated in this case.

The parties' failure to address head-on a Fourth Amendment issue raised in this litigation notwithstanding, because Plaintiff cannot demonstrate the second and third elements under *McDowell*, it is unnecessary to determine whether a Fourth Amendment violation occurred. The court will not speculate on what arguments the parties could have made on this issue.[9] *See Resolution Trust*, *supra*.

---

[8] Defendant denies that the officer "rubbed" Plaintiff's vagina, but that construction of events contradicts Plaintiff's deposition testimony.

[9] Construing the facts in a light most favorable to Plaintiff, she testified that the searching police officer "rubbed" her vagina in a manner that was "inappropriate" and made her feel "violated." (Doc. 15-1 at p. 23). When assessing whether a police officer conducted a reasonable search, "the totality of the circumstances — the whole picture — must be taken into account." *United States v. Cortez*, 449 U.S. 411, 417 (1981). "[A] search which is reasonable at its inception may violate the Fourth Amendment by virtue of its intolerable intensity and scope." *Terry v. Ohio*, 392 U.S. 1, 18 (1968) (citations omitted). If, indeed, a police officer uses a lawful search that is incident to an arrest as an opportunity to fondle a suspect's genitals, then the search becomes unreasonable.

Plaintiff has not and cannot identify a policy by the City of Tallassee that resulted in the deprivation of her Fourth Amendment rights.  Her Complaint alleges a broadly pled conclusion that a policy exist, but she does not provide any specifics about the alleged policy.  In *Monell v. Dep't of Social Services*, 436 U.S. 658 (1978), the Supreme Court concluded that

> a municipality cannot be held liable solely because it employs a tortfeasor ... a municipality cannot be held liable under § 1983 on a respondeat superior theory ... [except] when execution of a government's policy or custom, whether made my its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

*Monell*, 436 U.S. at 691-92, 694.  *See also City of Canton v. Harris*, 489 U.S. 378 (1989), and *Busby v. City of Orlando*, 931 F.2d 764 (11th Cir. 1991).  There must be a "causal link between the custom or policy" and the constitutional claim asserted by a plaintiff.  *Fundiller v. City of Cooper City*, 777 F.2d 1436, 1442 (11th Cir. 1985); *see also City of Oklahoma City v. Tuttle*, 471 U.S. 808, 819-821 (1985).[10]  Per *City of Canton*, the municipality must have acted deliberately.  "In order for a plaintiff to

---

[10] In her entire brief, Plaintiff cites one case in opposition to summary judgment: *Oklahoma City Tuttle*, 471 U.S. 808 (1985).  Plaintiff acknowledges that, consistent with *McDowell* and as stated in *Tuttle*, she has to "prove ... a policy or custom of the city ... [caused] the deprivation of constitutional rights[]" in order for municipal liability to attach. (Doc. 23 at p. 3 (quoting *Tuttle*, 471 U.S. at 828-29)).  However, Plaintiff ignores the substantial body of binding authority from the Supreme Court and U.S. Court of Appeals for the Eleventh Circuit that speaks to what a plaintiff must demonstrate to show a "policy or custom," despite the fact that Defendant discusses the cornerstone cases on that subject in its motion for summary judgment.

demonstrate a policy or custom, it is 'generally necessary to show a persistent and wide-spread practice.'" *McDowell*, 392 F.3d at 1290 (quoting *Wayne v. Jarvis*, 197 F.3d 1098, 1105 (11th Cir. 1999). "This prevents the imposition of liability based upon an isolated event." *Id.* (citing *Depew v. City of St. Marys, Georgia*, 787 F.2d 1496 (11th Cir. 1986)).

There is no evidence of a such a policy. Even assuming, *arguendo*, that the search of Plaintiff's person constitutes an unlawful search under the Fourth Amendment, on the record before this court, the search of Plaintiff's person is an isolated event, and a single unlawful search cannot support a claim for municipal liability as a matter of law.[11] Plaintiff also cannot demonstrate that the search is a result of a "consistent and widespread practice" nor can Plaintiff show that an unlawful search occurred because of a failure by Defendant to train its officers despite being on notice of pervasive unconstitutional searches by its officers. This is not a case rising to the level of *Monell* and its progeny. Accordingly, Defendant is entitled to summary disposition of Plaintiff's § 1983 municipal liability.

---

[11] Plaintiff directs the court to evidence that the Chief of Police for the City of Tallassee did not initiate an investigation into Plaintiff's claim of an unlawful search in support of her argument that Defendant exhibited deliberate indifference. That evidence does not establish deliberate indifference or a policy for purposes of municipal liability under § 1983. Construing the evidence in a light most favorable to Plaintiff, it shows that the Chief ignored a single instance of a possibly unlawful search. One unlawful search, again assuming without deciding that the search was unlawful, does not meet the threshold for demonstrating a policy.

**D.     Assault and Battery — Alabama State Law Claims**

Plaintiff did not respond to Defendant's motion for summary judgment as to her claims for assault and battery, which are set out in the Complaint as a single claim but are separate causes of action under Alabama law. *See, e.g.*, *O'Rear v. BH*, 69 So.3d 106, 117 (Ala. 2011) (discussing that "assault" is an "intentional, unlawful offer to touch the person of another in a rude or angry manner under such circumstances as to create in the mind of the party alleging the assault a well-founded fear of an imminent battery .... [a] successful assault becomes a battery, which consists of the touching of another in a hostile manner"); *Surrency v. Harbison*, 489 So.2d 1097, 1105 (Ala. 1986) (observing that "[a] successful assault becomes a battery") (citations omitted). As such, the claims are deemed abandoned. *See* Section III.A., *supra*.

Moreover, summary judgment is appropriate on the merits. Assuming, without deciding, that claims for assault and battery can lie against the City of Tallassee (instead of exclusively against the individual officer who searched Plaintiff), Plaintiff did not preserve the claims against Defendant as a matter of Alabama law. Before a plaintiff can recover damages against an Alabama municipality, a potential plaintiff must notify a city's clerk of the claim for liability against the municipality within six months of the date the claim arises and must also file with the city clerk a sworn

declaration attesting to the circumstances underlying the claim. *See* Ala. Code (1975) §§ 11-47-23, 11-47-192. There is no evidence of record that Plaintiff fulfilled those requirements, and summary judgment in Defendant's favor is warranted.[12]

## V.    CONCLUSION AND RECOMMENDATION

Accordingly, for the reasons as stated, it is the **RECOMMENDATION** of the Magistrate Judge that Defendant's motion for summary judgment (Doc. 15) be **GRANTED**.

It is **ORDERED** that the parties shall file any objections to the said Recommendation on or before **July 28, 2015.** Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party objects. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District

---

[12] In the alternative, the District Judge could decline to exercise supplemental jurisdiction over the state law claims.

Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).

**DONE** and **ORDERED** this 14th day of July, 2015.

/s/ Paul W. Greene
United States Magistrate Judge