**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **BARBARA FERRELL,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | |
| **v.** | * | **2:13-cv-935-MHT** |
| | * | **(WO)** |
| **CITY OF TALLASSEE,** *et al.*, | * | |
| | * | |
| **Defendants.** | * | |
| | * | |

## <u>ORDER ON PRETRIAL HEARING</u>

A pretrial hearing was held in this case on July 17, 2015, wherein the following proceedings were held and actions taken:

1.    <u>PARTIES AND TRIAL COUNSEL</u>:

Brett Harrison, attorney for Plaintiff

Rick Howard and April McKay, attorneys for Defendant

<u>COUNSEL APPEARING AT PRETRIAL HEARING</u>:

Same as trial counsel.

2.    <u>JURISDICTION AND VENUE:</u>

The parties do not contest the jurisdiction and venue of the pending claims in this action. Jurisdiction in this Court is proper pursuant to 28 USC § 1331, in that it involves a federal question.   Venue in this District is proper pursuant to 28 USC § 1391(a) in that all defendants are residents of the Middle District of Alabama, and the causes of action arose in this District.

3.    <u>PLEADINGS</u>:        The following pleadings and amendments were allowed:

Complaint

Answer

4.    <u>CONTENTIONS OF THE PARTIES</u>:

<u>Plaintiff</u>:

The Plaintiff was searched incident to an arrest by an officer of the Tallassee Police Department on December 20, 2011. During the search of the Plaintiff, the Tallassee Police Office, acting under the color of state law, groped and continuously and repeatedly grabbed and rubbed the breast and genitals of the Plaintiff. The Plaintiff testified that the wrongful, invasive and unconstitutional groping-style search the Tallassee Police Officer forced her to endure caused her to suffer extreme mental anguish and damage because it made her relive the rape she suffered earlier in life. The Tallassee Police officer continuously and repeatedly rubbed and groped the Plaintiff's breast and genitals over an extended period of time.

The evidence shows that an investigation as to the facts and circumstances of December 20, 2011 arrest of Ms. Ferrell, the City of Tallassee did not perform an investigation into the claims asserted by Ms. Ferrell. Further, the evidence shows that the Tallassee Police officers are not properly trained on searching members of the opposite sex nor or they provided with continuing education or seminars on the policy and procedure to search a female inmate by male officers.

COUNT I

The evidence is clear and unambiguous that the City of Tallassee does not train nor do they take continuing education courses on the proper techniques and procedures for a male police

officers to search female detainees/inmates.   The un-rebutted evidence shows that the Tallassee

Police officer who searched Ms. Ferrell had intent to invade the intimate privacy of Ms. Ferrell

while she was in the custody and control of the Tallassee Police Department.

COUNT II

The evidence is un-rebutted that Ms. Ferrell was arrested by the Tallassee Police

Department on December 20, 2011.   Further, the evidence is likewise un-rebutted, that she was

searched by a member of the Tallassee Police Department and caused to suffer groping and

evasive rubbing of her breast and vagina.   This clearly equates to assault and battery under

Alabama state law.


Defendant:

On December 20, 2011, the City of Tallassee Police Department Narcotics Division

initiated an undercover drug operation using a confidential informant. Sergeant James Wells,

Investigator Ken Barnes, and Investigator Chris Owenby met at the Tallassee Police Department

with the confidential informant, who placed a phone call to Jesse Ferrell, a/k/a "Slim". Mr. Ferrell

arranged to deliver crack cocaine to the informant's residence in exchange for $300.00 for the

delivery of the drugs. Mr. Ferrell instructed the informant to place the money in the mailbox and

that he would drive to the residence, retrieve the money, and place the crack cocaine in the

mailbox. Once the phone conversation ended, the investigators instructed the informant to return

home and wait for Mr. Ferrell. Investigator Owenby, Investigator Barnes, Sgt. Wells, Lt. Lee

Blalock, and Assistant Chief Chris Miles drove to and parked in unmarked units in the area of the

informant's residence to await the arrival of Mr. Ferrell. The informant advised the officers that

3

Mr. Ferrell would possibly arrive in a silver vehicle and that he might have a female driver. Sgt. Wells was positioned in view of the informant's house.   Investigator Owenby advised Sgt. Wells that a silver Dodge Stratus was approaching the residence. Sgt. Wells observed Mr. Ferrell sitting in the passenger seat. He then observed Mr. Ferrell reach out and open the informant's mailbox, just as he had described he would do in his telephone conversation with the informant.

Plaintiff alleges that she had turned off onto this street, on the way to Walmart, so that her son could determine the location of an alleged "noise" coming from her vehicle. The street where Plaintiff parked was approximately six streets away from the route to Walmart. Plaintiff parked approximately four feet from the informant's mailbox. Plaintiff testified that she did not see her son put anything in the mailbox, but was focused on the approaching officers.

Sgt. Wells immediately approached the Dodge Stratus and ordered both subjects to exit the vehicle and get on the ground. Investigator Owenby approached from the rear and observed Mr. Ferrell lying on the ground under the mailbox with the mailbox door open. Investigator Owenby placed both Mr. Ferrell and the driver, who was identified as Barbara Ferrell, in handcuffs while the two suspects were lying on the ground. Investigator Owenby then returned to Mr. Ferrell, assisted him to his feet, and performed a "pat-down" search. Plaintiff was also assisted to her feet and subjected to a "pat-down" search. In her Complaint, Ms. Ferrell alleges that the officers "did not simply stop and frisk (pat down for weapons)...but instead conducted an unreasonable and highly intrusive search of [her] person, including rubbing her entire body, including her breasts and genital area." Plaintiff further alleges that, as male officers, the officers did not have any basis to "strip search" a female detainee. While the Complaint describes the search at issue as a "strip search" conducted by multiple officers, Plaintiff admits that she was searched once by a single

City of Tallassee officer incident to her arrest. Plaintiff admits that her clothing was not removed and she was not strip-searched. During the search, the officer placed his hands inside Plaintiff's jacket and felt around and between her breasts, but did not place his hands inside her shirt or underwear. The officer further searched around her waist and "down [her] legs like a normal search." Plaintiff claims that the officer placed his hands down the length of her legs, touching against her genital area in the process. Plaintiff alleges that the search was improper as it caused her to feel violated and induced memories of a sexual assault in her past. She did not inform the officer at the time of her past sexual assault or her fear of being touched. Summarizing the search, Plaintiff testified that she took issue with the search because she was "touched by a male" which caused flashbacks of the sexual assault, and because she was searched "like how they would search a male".

It is City of Tallassee Police Department policy to perform a "pat-down" search of an individual incident to his or her arrest, particularly in arrests involving narcotics, for officer safety. Under the City's policy and practice, both males and females are searched in similar fashion, with searches around genital areas conducted discreetly and with minimal intrusion. If a female officer is available, the female officer will conduct a search of a female detainee. At the time of this incident, the City of Tallassee employed only one female police officer, who was not on duty the day of Plaintiff's arrest and search.   Thus, under the circumstances it was not feasible to have a female officer conduct the pat-down search of the plaintiff.

All of the officers involved in the arrest and search of Barbara and Jesse Ferrell are certified by the Alabama Police Officers Standards and Training Commission, the state organization that governs the training and certification of law enforcement officers in Alabama.

During the certification process, each officer receives training on "pat-downs" and searches of detainees. Each officer employed by the City of Tallassee also receives at a minimum 12 hours annual continuing education, which also includes courses and training regarding search and seizure. The City is unaware of any previous claim of an improper search of a female detainee by the Tallassee Police Department's officers.

Following the pat-down searches of Barbara and Jesse Ferrell, the officers searched the vehicle and ground for evidence of the narcotics that were to be delivered to the informant. The officers located two small black plastic bags under the mailbox, which contained approximately 3-4 grams of off-white rocklike matter believed to be crack cocaine. Jesse and Barbara Ferrell were arrested for felony distribution of a controlled substance and felony possession of a controlled substance. Jesse Ferrell admits that he was in possession of narcotics at the time of the arrest. Both Jesse and Barbara Ferrell were indicted by the Tallapoosa County grand jury. The charges against Barbara Ferrell were dismissed following Jesse Ferrell's guilty plea and assumption of total responsibility for the drug possession.

On December 20, 2013, Barbara Ferrell filed this lawsuit against the City of Tallassee and fictitious "John Doe" defendants, described as the Tallassee police officers who stopped and/or detained her on December 20, 2011. The complaint sets forth a cause of action pursuant to 42 U.S.C. §1983 against the unidentified individual officers for illegal search in violation of the Fourth Amendment. Plaintiff further alleges that the City is liable for the actions of its employees as the City's policy or custom of negligent hiring, training, supervision, and retention of its police officers was the proximate cause of Plaintiff's constitutional deprivations and injuries. Plaintiff's Complaint alleges assault and battery against the individual officers under state law, and alleges

6

that the City is vicariously liable for these actions of its employees.

Count I of Plaintiff's Complaint alleges that the City of Tallassee had a "policy or custom" of "negligent hiring, training, supervision and/or retention of its police officers" that was the "proximate cause of Plaintiff's constitutional deprivations and injuries". Plaintiff cannot present a genuine issue of material fact that any policy or custom of the City of Tallassee violated her constitutional rights. Plaintiff likewise cannot show any "persistent widespread practice" that led to the alleged constitutional violation, nor can she show actual or constructive knowledge of such by the City's Chief of Police. There is no evidence that the City inadequately supervised or trained its officers or that such inadequacy was the cause of any unconstitutional conduct.

In Count III of Plaintiff's Complaint, she alleges a state law claim against "defendants" for assault and battery under Alabama law. As Plaintiff has not identified any individual defendant, any claims against "Tallassee Police officers" are due to be dismissed.

Further, any claim against the City under Alabama law must be dismissed. Alabama Code (1975) § 11-47-23 states that there is a six month limitation period in which a claimant must notify the City Clerk of potential claims of municipal tort liability.   Plaintiff did not file a notice of claim with the City of Tallassee within six months of the subject incident as required by Alabama law.


5.   <u>STIPULATIONS BY AND BETWEEN THE PARTIES</u>:

This lawsuit arises from a search incident to the arrest of the Plaintiff for felony drug charges by members of the Tallassee Police Department. The felony drug charges were ultimately dismissed.

*  *  *

It is ORDERED that:

(1)  The jury selection and trial of this cause, which is to last two days, are set for October 5, 2015, at 10:00 a.m. at the United States Courthouse in Montgomery, Alabama;

(2) A trial docket will be mailed to counsel for each party approximately two weeks prior to the start of the trial term;

(3)  Each party shall have available at the time of trial, for use by the court (the judge, the courtroom deputy clerk, and the law clerk), three copies of the exhibit list and a sufficient number of copies of each photostatically reproducible exhibit for opposing counsel, the courtroom deputy clerk, the law clerk, the jurors, and the judge to each have a set of the exhibits;

(4)  Trial briefs ((a) summarizing the evidence to be presented at trial, (b) setting forth the elements of each and every claim and defense at issue and how the evidence does or does not satisfy those elements, and (c) addressing

any evidentiary issues that may arise at trial) are required to be filed by September 28, 2015;

(5) All deadlines not otherwise affected by this order will remain as set forth in the uniform scheduling order (doc. no. 9) entered by the court on April 15, 2014; and

(6) All understandings, agreements, deadlines, and stipulations contained in this pretrial order shall be binding on all parties unless this order be hereafter modified by order of the court.

DONE, this the 23rd day of July, 2015.

/s/ Myron H. Thompson
**UNITED STATES DISTRICT JUDGE**